O. G. E. CONSTRUCTION COMPANY, complainant,

*v.*

WALDORF HOLDING CORPORATION, defendant.

[Decided September 15th, 1932.]

*Mr. Walter A. Beers,* for the complainant.

*Mr. Harry R. Rinsky,* for the defendant.

BACKES, V. C.

The cause was submitted on a transcript of the testimony taken before another vice-chancellor.

By contract in writing of June 10th, 1930, the defendant, Waldorf Holding Corporation, agreed to sell to Otto Groth twenty building lots in a subdivision known as Sheridan Park in West Orange, free and clear, for $36,000, to be secured by mortgage. Groth was to start the erection of a dwelling on each lot within two weeks, according to plans to be approved by the defendant corporation. The defendant corporation was to advance $200 on each house when rough enclosed, to be secured by mortgage. The defendant corporation also was to procure a building and loan mortgage of $6,000 on each house and out of the first and second installments it was to receive $900 respectively, the price of the lot. The twenty lots were subject to three blanket mortgages, each releasable upon the payment of $300 per lot, and it is inferable that the first installment of the building and loan mortgages was to be used for a release. Groth transferred his contract to the complainant company, of which he was

president, probably his own operating company. The twenty houses were not started. Performance of the contract was modified. On July 29th, 1930, the defendant corporation conveyed to the complainant company five of the twenty lots, 45, 46, 51, 52 and 53 at $900 each (subject to the three mortgages which were releasable upon the payment of $900 per lot) and took in payment of the $4,500 purchase price and in repayment of $1,000 to be advanced ($200 a house to be built on each) a mortgage of $5,500. The complainant company built houses on lots 45, 46 and 52 and received $600, the advance of $200 on each house. The defendant corporation procured a $6,000 building and loan mortgage on each, released or subordinated its mortgage as to them and received $900 from each mortgage and a return of the $600 advanced. The prior mortgagees released the three lots. The defendant corporation was unable to obtain building and loan mortgages on lots 51 and 53 and houses were not built on them. One of the prior blanket mortgages was foreclosed, wiping out the equity of redemption in these two lots as well as the remaining fifteen of the twenty which were to be conveyed. These are the facts as nearly as they can be made out from the transcript in which more facts are lacking than are told.

The object of the bill is to compel the defendant corporation to release lot 52 from the operation of its mortgage, as, it is claimed, it had done with lots 45 and 46, upon receiving proportionate payments from the building and loan mortgages. There was no contract to release upon payment *pro tanto*. The original agreement to convey the twenty lots contains no such provision, nor does the evidence show an agreement to that effect when the five lots were conveyed. The conveyance of the five lots was undoubtedly in part performance of the contract to convey the twenty lots, modified only in this respect: The twenty lots were to be conveyed at the price of $1,800 each, free of the three blanket mortgages, the release of which the defendant corporation was to obtain at a cost of $900 each; whereas the five lots were conveyed at $900 a lot subject to the mortgages, the release

of which the complainant could obtain at a cost of $900 each. The complainant's prayer for a release must be denied for failure of proof of an agreement to release, but the prayer of the bill to cancel the mortgage may be sustained by altogether ignoring the allegations of a promise to release and by treating the allegation of the defendant corporation's failure to obtain building and loan mortgages on lots 51 and 53 as setting up part failure of consideration. The covenant of the defendant corporation to procure a $6,000 mortgage on each of the twenty lots inhered in the conveyance of the five lots, and was breached as to lots 51 and 53. A fair interpretation of the contract is that the complainant company was to be put in funds to pay the defendant corporation's mortgage by the latter procuring building and loan mortgages. The covenant to pay and the covenant to procure the means to pay were mutual. The defendant corporation defaulted and the loss of the two lots by foreclosure of one of the superior mortgages is to be laid at its doors. To the extent of $1,800, the price of the two lots, and the $400 to be advanced on the two houses to be built on them, which was not in fact advanced, there was a failure of consideration. They equal the balance due on the mortgage and the complainant would be entitled to have it surrendered but for this: The defendant corporation gave the president of the complainant a check for $500 in connection with the building operation. He denies it and he denies his endorsement on the check, but a comparison of his endorsement with his signatures on other checks indicate that he is wrong. Upon the payment of $500 and interest the complainant may have a decree.

Due to continual interruptions of the witnesses, frequent interference with examining counsel by opposing counsel and constant bickering, both counsel labored under considerable handicap in presenting the facts. Had they been produced in an orderly manner it may have resulted in a different decision than the one we have reached on the very unsatisfactory record before us. For fear that the shortcomings at the trial may result in injustice to either litigant, counsel are at liberty, upon proper showing, to apply for a rehearing.